**FAIRVIEW TOWNSHIP**

v.

**FAIRVIEW TOWNSHIP POLICE ASSOCIATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2001.

Decided March 28, 2002.

Sean T. Welby, Harrisburg, for appellant.

Walter A. Tilley, III, York, for appellee.

Before McGINLEY, Judge,
FRIEDMAN, Judge, and MIRARCHI,
Jr., Senior Judge.

OPINION BY Senior Judge
MIRARCHI.

The Fairview Township Police Association (Association) appeals from an order of the Court of Common Pleas of York County that vacated the portion of the arbitration award requiring Fairview Township (Township), a second class township, to provide postretirement medical benefits to its police officers and their spouses upon their retirement.

The issues on appeal are: (1) whether the trial court lacked jurisdiction over the Township's petition to review the arbitration award due to the Township's failure to timely file the petition; and (2) whether the arbitrators had authority to require the Township to provide postretirement medical benefits to its police officers and their spouses under the Act of June 24, 1968, P.L. 237, commonly known as "Act 111," 43 P.S. §§ 217.1—217.10, and Section 1512(d) of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 66512(d). We reverse and reinstate the arbitration award.

The Association is a collective bargaining unit representing the Township police officers. Before the collective bargaining agreement between the Association and

the Township was scheduled to expire on December 31, 1999, the parties began negotiating terms of a new agreement. When the negotiations reached an impasse, the parties submitted the disputes for arbitration. Pursuant to Section 4 of the Act 111, 43 P.S. § 217.4, each party appointed an arbitrator, and the third neutral arbitrator was selected by the arbitrators appointed by the parties from the list provided by the American Arbitration Association.

In the Stipulation submitted to the trial court, the parties stipulated to the following events that occurred after an arbitration hearing held in February 2000. Sometime in August 2000, the Association-appointed arbitrator signed a proposed arbitration award and forwarded it to the neutral arbitrator. On August 22, 2000, the neutral arbitrator signed the award and forwarded it to the Township-appointed arbitrator, John J. Sylvanus, Esquire, who received it on August 25, 2000. On September 25, 2000, Sylvanus gave a copy of the award to the Township solicitor without signing or dissenting from the award. Sylvanus and the Township solicitor are partners in the same law firm. Sylvanus also faxed a copy of the arbitration award to the Township assistant manager on September 25, 2000.

On October 25, 2000, the Township filed the petition for review with the trial court seeking to vacate Paragraph 10 of the arbitration award, which provided:

> Retirement Healthcare—Effective January 1, 2000 the Township shall provide medical benefits to officers and their spouses for all officers retiring on either disability pursuant to Act 600 or normal age and service retirement pursuant to Act 600. Said benefits shall extend for a period of five years from the date of the officer's retirement and shall only be provided if the officer certifies, in writing, on or before the anniversary date of his or her retirement that he or she is not eligible for coverage under any other employer sponsored healthcare plan, including a plan sponsored by the employer of his or her spouse. Further, for spousal coverage, the officer must be legally married to his or her spouse at the time of retirement. An officer must choose and be eligible for this benefit at the time of his or her retirement.

The Township alleged that it was not permitted to pay postretirement medical benefits to the police officers and their spouses under Section 1512(d) of The Second Class Township Code, which provides in relevant part:

> The board of supervisors may contract with any insurance company, nonprofit hospitalization corporation or nonprofit medical service corporation to insure its ... *employes and their dependents* under a policy or policies of group insurance covering life, health, hospitalization, medical service or accident insurance. (Emphasis added.)

The Township argued that the term "employes" under Section 1512(d) includes only current employees, not former employees who have retired, and that by requiring the Township to provide postretirement benefits to its former employees, the arbitrators mandated the Township to perform an illegal act. In its answer, the Association alleged that the Township failed to timely file the petition for review within thirty days of the arbitration award.

The trial court concluded that the petition for review was filed timely within thirty days after the Township-appointed arbitrator provided the copy of the arbitration award to the Township. As to the merits of the petition, the trial court concluded that the term "employes" under Section 1512(d) includes only current em-

ployees and that the arbitrators therefore mandated the Township to perform an illegal act by requiring it to provide postretirement medical benefits to retirees and their spouses. The trial court accordingly vacated Paragraph 10 of the arbitration award. The Association's appeal to this Court followed.

Article 3, Section 31 of the Pennsylvania Constitution, Pa. Const. Art. 3, § 31, authorizes the General Assembly to enact laws "which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties ...." Pursuant to Article 3, Section 31 of the Pennsylvania Constitution, the Legislature enacted the Act 111 granting policemen and firemen "the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits" and "the right to an adjustment or settlement of their grievances or disputes." Section 1 of the Act 111, 43 P.S. § 217.1.

Section 7(a) of the Act 111, 43 P.S. § 217.7(a), further provides in pertinent part:

The determination of the majority of the board of arbitration thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved. Such determination shall be in writing and a copy thereof shall be forwarded to both parties to the dispute. No appeal therefrom shall be allowed to any court.

Despite Section 7(a) of the Act 111 disallowing an appeal from the arbitration award, the courts have recognized limited review of an arbitration award under the narrow certiorari scope of review, under which the reviewing court may question only (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) excess of the arbitrators' power; and (4) deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n*, 540 Pa. 66, 656 A.2d 83 (1995); *Guthrie v. Borough of Wilkinsburg*, 508 Pa. 590, 499 A.2d 570 (1985).[1]

The Association first contends that the trial court lacked jurisdiction to review the arbitration award because the Township failed to timely file the petition for review.

The petition to review an arbitration award is deemed to be an appeal from an order of a government agency and, therefore, must be filed within thirty days of the entry of the arbitration award. Section 933(b) of the Judicial Code, *as amended*, 42 Pa.C.S. § 933(b); Section 5571(b) of the Judicial Code, 42 Pa.C.S. § 5571(b). For the purpose of determining the timeliness of an appeal, the date of entry of an order is the date of service of the order, or the date of mailing if service is made by mail. Section 5572 of the Judicial Code, 42 Pa. C.S. § 5572.

The Association argues that the arbitration award executed by the majority of the arbitration panel constitutes a final decision on the disputed issues under Section 7(a) of the Act 111, and that the date of the entry of the arbitration award in this matter, therefore, should be August 22, 2000

1. Under Section 933(b) of the Judicial Code, *as amended*, 42 Pa.C.S. § 933(b), courts of common pleas have jurisdiction over "petitions for review of an award of arbitrators appointed to arbitrate a dispute between a government agency, except a Commonwealth agency, and an employee of such agency."

when the arbitration award signed by the Association-appointed arbitrator and the neutral arbitrator was mailed to the Township-appointed arbitrator.

The facts in this matter are similar to those in *City of Jeannette v. Fraternal Order of Police, Jeannette Lodge No. 24*, 477 Pa. 588, 385 A.2d 351 (1978). In that case, the neutral arbitrator executed the award and sent the copy of the award to the arbitrators appointed by the parties. The union-appointed arbitrator then concurred in the award in writing and forwarded it to the township-appointed arbitrator, who dissented from the award and forwarded the copy of the award signed by the majority of the arbitration panel and the copy of his dissent to the neutral arbitrator, who in turn forwarded those copies to the American Arbitration Association. The American Arbitration Association subsequently sent the copies of the arbitration award and the dissent to the parties.

As in this matter, the union argued that for the purpose of determining the timeliness of the application for review of the arbitration award, the date of the award was the date of the execution of the award by the majority of the arbitration panel. The Pennsylvania Supreme Court rejected the union's argument and held that the arbitration award is considered final under Section 7(a) of the Act 111 only where the award is in writing, and a copy of the award is forwarded to both parties, and that the date of the award was therefore the date that the parties received the copy of the award from the American Arbitration Association.

In this matter, the Township-appointed arbitrator received the arbitration award executed by the Association-appointed arbitrator and the neutral arbitrator on August 25, 2000. On September 25, 2000, he sent the copy of the award to the Township solicitor and the Township assistant manager with a letter, in which he stated:

I do not know whether he [the neutral arbitrator] would be receptive to a final attempt to put this Agreement in a form consistent with his award, and to welcome the opportunity to make another attempt. I welcome your input as to whether you think we ought to give this one more try or simply accept this version of the Agreement as written. I can always dissent from the arbitrator's award. Please let me know how you wish me to proceed.

John J. Sylvanus' Letter dated September 25, 2000.

 As his letter indicates, Sylvanus neither accepted nor dissented from the terms of the award executed by the majority of the arbitration panel when he sent the copy of the award to the Township solicitor and the Township assistant manager on September 25, 2000. Moreover, he admittedly never forwarded the copy of the award back to the other arbitrators. Therefore, neither August 22, 2000, the date that the award signed by the majority of the arbitration was mailed to the Township-appointed arbitrator, nor September 25, 2000, the date that the Township-appointed arbitrator sent the copy of the award to the Township without his vote, constitutes the date of the award for the purpose of determining the timeliness of the petition for review.[2] Further, the rec-

2. The Association nonetheless argues that failure to consider the date of the execution of the award by the majority of the arbitration panel as the date of the arbitration award would result in allowing a party to manipulate the finality of the award by directing its arbitrator to take no action on the proposed award. Under Section 4(b) of the Act 111, however, the board of arbitration is required to commence the arbitration proceedings within ten days and make its determination within thirty days of the appointment of the

ord fails to show if and when the Township-appointed arbitrator notified the other arbitrators of his objection to the award before the petition for review was filed on October 25, 2000. Under the facts stipulated by the parties, the Township's petition for review was not untimely, and the trial court, therefore, had jurisdiction to review the arbitration award.

The Association next contends that the trial court erred in concluding that the arbitrators exceeded their authority under the Act 111 by mandating the Township to perform an illegal act. We agree.

An arbitration award may be in excess of the arbitrators' power, if it requires the public employer to perform an illegal act, or if it does not involve legitimate terms or conditions of employment. *Appeal of Upper Providence Township*, 514 Pa. 501, 526 A.2d 315 (1987). The arbitrators may not require a public employer to do an act which it could not do voluntarily. *Id.* However, "[a]n error of law ... which does not so exceed the powers and authority of the arbitrators (such as a misinterpretation or misapplication of law affecting an arbitrable term or condition of employment that did not require the doing of a prohibited act by the public employer) is not alone grounds for reversal of an Act 111 arbitration award ...." *Id.* at 515, 526 A.2d at 322.

It is well established that municipalities are created by the state and as such, may do only those things which the state legislature has placed within their power in enabling statutes. *Appeal of the Borough of Ambridge*, 53 Pa.Cmwlth. 251, 417 A.2d 291 (1980). In vacating Paragraph 10 of the arbitration award, the trial court concluded that the term "employes" under 1512(d) of The Second Class Township Code includes only current employees and that the Township is therefore precluded from providing medical insurance coverage to former employees who have retired.

In so concluding, the trial court relied on *Lower Merion Fraternal Order of Police Lodge Number Twenty–Eight v. Township of Lower Merion*, 511 Pa. 186, 512 A.2d 612 (1986), in which the Pennsylvania Supreme Court was evenly divided, with one Justice not participating, on the issue of whether the arbitrators exceeded their authority by *eliminating* the postretirement medical benefits under Section 1502 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. 56523, which authorizes the first class townships to provide medical benefits to "township employees or any class or classes thereof." Because the Supreme Court was evenly divided on the issue, the Court by a per curiam order affirmed the decision of this Court which held, *inter alia*, that the elimination of postretirement medical benefits was within the scope of the arbitrators' authority.

In the opinion in support of affirmance in part and reversal in part, Justice Zap-

---

third neutral arbitrator. The arbitration hearing was held in this matter in February 2000, but the proposed award was not signed by the Association-appointed arbitrator and the neutral arbitrator until August 22, 2000. The Association never complained of the delay in the arbitration proceeding until the Township filed the petition for review. Where, as here, a party acquiesces in the extension of the arbitration proceeding beyond the time limitations set forth in Section 4(b) of the Act 111, that party may not challenge the timeliness of the arbitration award. *Borough of New Cumberland v. Police Employees of the Borough of New Cumberland*, 503 Pa. 16, 467 A.2d 1294 (1983). Because the Association acquiesced in the delay in the arbitration award and because the Act 111 sets forth the specific time limitations applicable to an arbitration proceeding, the Association's argument is without merit.

pala concluded in *Lower Merion* that the arbitrators acted properly in terminating the postretirement medical benefits, noting that once a person retires, he or she is no longer an employee and that the township would be therefore performing an illegal act under The First Class Township Code by providing medical benefits to retirees. In so concluding, Justice Zappala relied on *City of Washington v. Police Department of the City of Washington*, 436 Pa. 168, 259 A.2d 437 (1969), which held that the arbitrators exceeded their power by mandating the city to pay hospitalization insurance premiums for families of its employees where the applicable statute authorized the city to provide such benefits to "employees or any class or classes thereof." On the other hand, Justice Larsen concluded in the opinion in support of reversal that the arbitrators exceeded their authority in eliminating postretirement medical benefits. Justice Larsen viewed postretirement benefits as deferred compensation for the compensation foregone during active employment in exchange for benefits and security upon retirement.

Subsequently, the Supreme Court held in *Appeal of Upper Providence Township* that the arbitrators' award eliminating postretirement hospital and medical benefits was in excess of exercise of their powers, where the applicable provision of the home rule charter act specifically prohibited the municipality from diminishing the rights or privileges of any former employees or any present employees in pension or retirement system.

*Lower Merion* lacks precedential value because the Supreme Court was equally divided on the issue of the arbitrators' authority. *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745 (1998); *Ellis v. Sherman*, 330 Pa.Super. 42, 478 A.2d 1339 (1984), *aff'd*, 512 Pa. 14, 515 A.2d 1327 (1986). More-

over, *Lower Merion* and *Appeal of Upper Providence Township* addressed the issue of the *elimination* of the existing postretirement benefits, as opposed to grant of future postretirement medical benefits to the current employees involved in this matter.

Although this Court has not considered the issue of whether the second class townships are prohibited from providing postretirement medical benefits under The Second Class Township Code, this Court has previously reviewed other enabling statutes authorizing the municipalities to provide medical benefits to "employes or any class or classes thereof" and consistently held that the arbitrators did not exceed their power by mandating the municipalities to provide postretirement medical benefits to policemen and firemen. *See Borough of Elizabethtown v. Elizabethtown Non–Supervisory Police Negotiating Committee*, 719 A.2d 1144 (Pa.Cmwlth. 1998), involving Section 1202(37) of the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 46202(37); *City of Wilkes–Barre v. Wilkes–Barre Firefighters Ass'n, Local 104*, 142 Pa.Cmwlth. 168, 596 A.2d 1271 (1991), *aff'd*, 533 Pa. 326, 623 A.2d 815 (1993), interpreting Section 2403.53 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 37403.53; *Township of Tinicum v. Fife*, 95 Pa.Cmwlth. 516, 505 A.2d 1116 (1986), *appeal denied*, 518 Pa. 656, 657, 544 A.2d 1343, 1344 (1988), construing Section 1502 of The First Class Township Code, 53 P.S. § 56563.

After review of Section 1512(d) of The Second Class Township Code authorizing the second class townships to provide medical insurance coverage to its "employes and their dependants," we reach the same conclusion that the Township is not precluded from providing postretirement

medical benefits to its employees and their spouses upon retirement.

■ It is well established that provisions of a statute must be construed with reference to the context in which they appear. *Consulting Engineers Council of Pennsylvania v. State Architects Licensure Board,* 522 Pa. 204, 560 A.2d 1375 (1989). Thus, the term "employees" in a statute or an ordinance may have different meanings depending on the context in which that term appears. *See, e.g., Horsley v. Philadelphia Board of Pensions & Retirement,* 97 Pa.Cmwlth. 558, 510 A.2d 841 (1986), *aff'd,* 519 Pa. 264, 546 A.2d 1115 (1988) (the city ordinance setting forth disqualification for retirement benefits for an "employee" who was convicted of certain criminal charges was applicable to the individual who pled guilty after his retirement for the offense committed prior to retirement); *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (the term "employee" in the anti-retaliation provision of the Civil Rights Act of 1964 includes "former employees"); *Erie County Retirees Ass'n v. County of Erie,* 220 F.3d 193 (3rd Cir. 2000), *cert. denied,* 532 U.S. 913, 121 S.Ct. 1247, 149 L.Ed.2d 153 (2001) (the term "employee benefits" in the Age Discrimination in Employment Act includes the health coverage for "retirees").

In addition, statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things; therefore, they must be construed together as one statute, if possible. Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932; *MacElree v. Chester County,* 667 A.2d 1188 (Pa.Cmwlth.1995), *appeal denied,* 545 Pa. 666, 681 A.2d 180 (1996).

Section 1 of the Act 111 grants policemen and firemen the right to collectively bargain with the public employer concerning the terms and conditions of employment, including "retirement, pension and other benefits." Under the Act 111, the municipalities may not enter into a collective bargaining agreement over the rights of individuals, who have already retired and are no longer members of the bargaining unit. *Township of Wilkins v. Wage & Policy Committee of the Wilkins Township Police Department,* 696 A.2d 917 (Pa. Cmwlth.1997). However, the issue in this matter does not involve the rights of individuals who have already retired. Rather, this case concerns the rights of the police officers currently employed by the Township to bargain with the Township over their future postretirement benefits.

When the term "employes" in Section 1512(d) of The Second Class Township Code is construed in conjunction with Section 1 of the Act 111 granting the police officers the right to collectively bargain with their public employers over "retirement, pension and other benefits," it is clear that the medical insurance coverage of "employes" under Section 1512(d) should include postretirement medical benefits of the police officers.

Moreover, retirement benefits in Pennsylvania are not mere gratuities or expectancies subject to the whim of the munificent public employer; rather, the nature of retirement provisions for public employees is that of deferred compensation for services actually rendered in the past. *Commonwealth ex rel Zimmerman v. Officers & Employees of Retirement Board,* 503 Pa. 219, 469 A.2d 141 (1983); *Fife.* As Justice Larsen observed in *Lower Merion:*

[W]hen a person undertakes employment, there is usually a trade-off between present compensation and deferred compensation that is activated at retirement. The employe agrees to accept less during his active employment in exchange for benefits during his retirement. In the instant case, the post

retirement medical benefits requested by appellant are deferred compensation for the compensation forgone during active employment in exchange for benefits and security upon retirement.

*Lower Merion,* 511 Pa. at 199, 512 A.2d at 619. When postretirement benefits are viewed as deferred compensation, it is abundantly clear that the Township is not precluded under Section 1512(d) of The Second Class Township Code from providing those benefits to the police officers and their spouses upon their retirement.

Hence, the trial court erred in concluding that the arbitrators exceeded their authority by mandating the Township to provide postretirement medical benefits to its police officers and their spouses upon retirement. Accordingly, the order of the trial court is reversed, and Paragraph 10 of the arbitration award is reinstated.

### ORDER

AND NOW, this 28th day of March, 2002, the order of the Court of Common Pleas of York County in the above-captioned matter is hereby reversed. Paragraph 10 of the arbitration award is reinstated.