611 A.2d 193

**Albert MAZZO and John Anderson, Appellants,**

v.

**BOARD OF PENSIONS AND RETIREMENT OF the CITY OF PHILADELPHIA, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1992.

Decided June 17, 1992.

Harry Lore, Philadelphia, for appellants.

Steven K. Ludwig, Deputy City Sol., Stuart W. Davidson, Philadelphia, for Carmen Christy.

Maria L. Petrillo, Philadelphia, for Board of Pensions.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal, by allowance, from an order of the Commonwealth Court which reversed an order of the Court of Common Pleas of Philadelphia which had reversed an order of the Board of Pensions and Retirement of the City of Philadelphia denying pension benefits to the appellants, Albert Mazzo

and John Anderson. On the basis that appellants are entitled to receive their pension benefits, we reverse.

Appellants were employed as police officers in the City of Philadelphia when, on March 8, 1984, they were dismissed from their jobs. The dismissals occurred because appellants were indicted along with other police officers for violations of various federal laws. The officers were charged with having accepted bribes to overlook violations of gambling laws. At the time of their dismissals, appellants had obtained vested pension benefits under the Municipal Employee Retirement System. In November of 1984, appellants were brought to trial and found not guilty. Subsequently, they applied for reinstatement to their jobs, but this was denied.

In October of 1987, appellants filed applications to begin receiving their pension benefits. Benefits were denied, however, on the basis that Section 217 of the Municipal Retirement System Ordinance of the City of Philadelphia (Ordinance) prohibits payment of benefits to former employees who, after being charged with crimes and dismissed from their jobs, fail to secure reinstatement.

Section 217 of the Ordinance provides, in relevant part, as follows:

*Section 217. Disqualification.*

217.1. Notwithstanding any other provision of this Article, no employee nor any beneficiary designated by or for any employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of contribution paid into the Retirement System, without interest, if such employee

(a) pleads or is finally found guilty, or pleads no defense, in any court, to any of the following:

[enumerated crimes, including acceptance of bribes]

(b) refuses or fails to testify or answer any questions which, under Section 10–110 of the Home Rule Charter is ground for forfeiture of office or position;

*(c) while charged with having committed any of the offenses set forth under (a) or (b) above, is dismissed and*

(1) if a Civil Service employee, does not appeal his dismissal to the Civil Service Commission, or having appealed, does not prosecute his appeal to a conclusion favorable to him, or

(2) if exempt from Civil Service, does not prosecute his application for retirement benefits to a conclusion favorable to him, or

(3) resigns.

217.2. Where an employee is dismissed for any of the foregoing reasons, or resigns while under such charges, no retirement or other benefits shall be payable pending the final disposition of any criminal proceedings and the expiration of any period for appeal, or appeal to the Civil Service Commission. *If the employee is finally successful in such criminal proceedings and in his appeal from dismissal before the Civil Service Commission, or if, following his acquittal or discharge on the criminal proceedings, the employee is restored to his office or position, then all such employee's retirement and other rights and benefits shall be restored as of the date of such dismissal or resignation.* (Emphasis added).

■■■■■ Appellants contend that the Ordinance, by making the payment of pension benefits contingent upon an employee's being restored to his position of employment after he has successfully defended charges of criminal misconduct, is invalid on the ground that it conflicts with the Public Employee Pension Forfeiture Act (PEPFA), 43 P.S. § 1311 et seq. We agree.

In PEPFA the circumstances under which crimes committed by public employees are to serve as a basis for denial of pension benefits are clearly defined. In 43 P.S. § 1313, it is provided:

**§ 1313. Disqualification and forfeiture of benefits**

(a) Notwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any

pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

(b) The *benefits shall be forfeited upon entry of a plea of guilty or no defense or upon initial conviction* and no payment or partial payment shall be made during the pendency of an appeal. *If a verdict of not guilty is rendered or the indictment or criminal information finally dismissed, then the public official or public employee shall be reinstated as a member of the pension fund or system and shall be entitled to all benefits* including those accruing during the period of forfeiture if any. Such conviction or plea shall be deemed to be a breach of a public officer's or public employee's contract with his employer.

(Emphasis added).

■ It is clear that police officers of the City of Philadelphia are "public employees" covered by PEPFA. In 43 P.S. § 1312, "public employees" are defined as encompassing persons employed by political subdivisions, including subdivisions which, like the City of Philadelphia, are governed by home rule charters. Further, the crimes with which appellants were charged fall plainly within the ambit of PEPFA, as per the definition of "crimes related to public office or employment" set forth in 43 P.S. § 1312.

There exists an obvious conflict between PEPFA and the Ordinance, for, unlike the Ordinance, PEPFA contains no provision making job reinstatement a prerequisite for receiving pension benefits. In 43 P.S. § 1313(b), supra, it is expressly provided that public employees *shall* receive all of their pension benefits if, after having been charged with criminal conduct, a verdict of not guilty is rendered or the indictment or criminal information is finally dismissed. Appellants were charged with crimes, and, inasmuch as they were acquitted, are plainly entitled to receive pension benefits under this provision.

The Board argues, however, that PEPFA should be construed as requiring that appellants receive their benefits only if the political subdivision for which they worked has not

imposed additional conditions, such as, for example, reinstatement. We do not agree. The language of the statute is clear. There is no indication in any of its provisions that political subdivisions are free to enact ordinances, which, by imposing further conditions upon the payment of benefits, would negate PEPFA's mandate that benefits be paid.

In *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 380–81, 77 A.2d 616, 619–20 (1951), this Court set forth the following standard for determining whether any given state statute preempts the enactment of local ordinances addressing the same subject matter:

> There are statutes which expressly provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation. On the other hand there are statutes which expressly provide that municipal legislation in regard to the subject covered by the State act is forbidden. Then there is a third class of statutes which, regulating some industry or occupation, are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered by the State; in such cases the question of whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard. It is of course self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute....

(Footnotes omitted). See also *Council of Middletown Township v. Benham*, 514 Pa. 176, 180–81, 523 A.2d 311, 313 (1987).

It is clear that PEPFA contains no express provision addressing the question of whether municipal ordinances can provide for forfeiture of pension benefits upon terms different from those contained in the statute. Nevertheless, the plain language of the statute leads us to conclude that, where forfeitures based upon allegations of criminal misconduct are

concerned, the legislature did not intend that municipalities would restrict the payment of benefits, which, under PEPFA, are required to be paid.

In enacting PEPFA, the legislature sought to promote integrity in public employment by imposing a forfeiture provision that would deter acts of criminal misconduct, thereby encouraging public employees to maintain standards of conduct deserving of the public's trust. At the same time, however, the legislature regarded pensions as important property interests that deserve a certain measure of protection. Indeed, it has long been recognized in this Commonwealth that pensions for public employees are not mere gratuities provided by the employer, but rather are deferred compensation for services rendered in the past. See *Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board,* 503 Pa. 219, 222, 469 A.2d 141, 142 (1983) (plurality opinion compiling cases). The legislature sought to ensure that individuals who have saved for retirement by accumulating pension rights will not be unjustly foreclosed from receiving benefits. In pursuit of these interests, PEPFA was designed to assure uniformity in the forfeiture of benefits where allegations of criminal misconduct are concerned, requiring *conviction* as a condition precedent to forfeiture. See 43 P.S. § 1313(b), supra.

In PEPFA, the legislature comprehensively addressed the subject of when public employees are to be denied their pension benefits in connection with criminal misconduct related to public employment. Upon entering pleas of guilty or no defense, or upon being convicted, employees forfeit their benefits. 43 P.S. § 1313(b), supra. Employees charged with crime but later relieved of the charges, or tried and found not guilty, are, under PEPFA, entitled to benefits. *Id.* Thus, PEPFA invokes only very narrow and clearly defined grounds for forfeiture, thus reflecting the tenor of our law which disfavors provisions broadly imposing forfeiture. See generally *Fisher Estate,* 442 Pa. 421, 424, 276 A.2d 516, 518–19 (1971) ("[F]orfeitures are not favored in the law and are to be strictly construed.") *Bilec v. Auburn & Associates, Inc. Pension*

*Trust,* 403 Pa.Super. 176, 186, 588 A.2d 538, 543 (1991) ("[F]or-feitures are not favored in the law ... especially in cases involving employee pensions."), appeal denied, 528 Pa. 620, 597 A.2d 1150 (1991).

Given the legislature's directive that benefits *shall* be paid when individuals have been acquitted or otherwise absolved of criminal charges, it is not possible to uphold a municipal ordinance declaring the benefits *shall not* then be paid. See *Western Pennsylvania Restaurant Association v. Pittsburgh,* supra; *Council of Middletown Township v. Benham,* 514 Pa. at 184–85, 523 A.2d at 315 (local ordinances which conflict with state law are invalid).

Here, the Ordinance directs that benefits shall not be paid unless the dismissed employee obtains reinstatement. It is in plain conflict with PEPFA's directive that benefits be paid if the accused employee is not found guilty upon criminal charges. To this extent the Ordinance must, therefore, be declared invalid. The decision of the Commonwealth Court upholding the Ordinance and denying appellants the receipt of benefits must, accordingly, be reversed.

Order reversed.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice, dissenting.

I conclude that the Public Employee Pension Forfeiture Act, 43 P.S. § 1311 et seq., does not preempt Philadelphia's municipal ordinance prohibiting payment of benefits to employees who have not been reinstated to their positions after dismissal due to the filing of criminal charges. I would affirm the Commonwealth Court's decision denying pension benefits to the Appellants.

Preemption of the field by the General Assembly is the exception and not the rule. *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987). We must exercise restraint, therefore, in determining whether legislative action by the General Assembly was intended to proscribe municipal legislation in the area. Local legislation is permissi-

ble unless the state has retained all regulatory and legislative power for itself.

"The state is not presumed to have preempted a field merely by legislating in it. The General Assembly must clearly show its intent to preempt a field in which it has legislated." *Council of Middletown*, 514 Pa. at 180, 523 A.2d at 313, (citations omitted.). Where, as here, the statute does not expressly provide that municipal legislation is forbidden, we must undertake an analysis of the statutory provisions to ascertain the legislative intent. *Western Pennsylvania Restaurant Association v. City of Pittsburgh*, 366 Pa. 374, 77 A.2d 616 (1951).

The purpose of the pension forfeiture statute was to deny retirement and other benefits to public officials and public employees for criminal conduct committed through their public offices or positions. The forfeiture provision is a safeguard for the public intended to deprive a public official or public employee of the benefits of his position when the position and public trust have been abused. Forfeiture acts not only as retribution for such misconduct, but also as a disincentive.

The pension forfeiture statute mandates that the public official or public employee shall not receive benefits upon conviction or a plea of guilty or no defense for any crime related to his office or employment. The Philadelphia ordinance further prohibits the payment of benefits when the individual who has been dismissed from his position following such criminal charges has not been reinstated. Unlike the majority, I do not interpret the pension forfeiture statute as a directive that benefits shall be paid when individuals have been acquitted or absolved of criminal charges. Nor do I interpret the Philadelphia municipal ordinance as imposing restrictions inconsistent with the forfeiture statute.

The Philadelphia municipal ordinance imposes restrictions that are complementary to, and not in conflict with, the forfeiture statute. In furtherance of the purpose of the statute, the ordinance implicitly recognizes that an acquittal in a criminal proceeding is not the legal equivalent of a finding of innocence. For that reason, we permit a guilty verdict to be

introduced in a collateral civil proceeding as proof of the facts underlying the criminal conviction, but do not allow an acquittal to be introduced to show that the accused did not commit the acts charged.

As we stated in *Pennsylvania Turnpike Commission v. U.S. Fidelity & Guaranty Co.*, 412 Pa. 222, 227–28, 194 A.2d 423, 426 (1963), (citations omitted.),

> In the case of a judgment of acquittal or nolle prosequi, Pennsylvania has consistently followed the rule that the criminal judgment is not admissible as evidence to prove that the defendant did not do the act complained of. . . .

> In view of the substantial difference in the quantum of proof required in civil and criminal cases, the rule of exclusion in cases wherein a judgment of acquittal is entered is rational and well grounded.

A judgment of conviction is a positive finding, indicating that the Commonwealth has established the charges beyond a reasonable doubt, whereas an acquittal is a "negative statement that the proof necessary for a conviction was not forthcoming." *City of Philadelphia v. Fraternal Order of Police*, 105 Pa.Cmwlth. 639, 525 A.2d 460, 462 (1987), (citation omitted.)

A municipality should not be foreclosed from establishing the offenses charged in a collateral civil proceeding involving dismissal from employment because the public official or public employee was not convicted of the offenses in a criminal proceeding. The fact that the Appellants were found not guilty in the criminal proceedings does not establish that they did not commit acts in their official capacity as police officers that abused their position and the public trust. The Philadelphia municipal ordinance would deny public officials and public employees retirement benefits for criminal conduct committed through their positions in instances where there was no criminal conviction, but sufficient evidence was introduced in the collateral civil proceeding to establish the criminal conduct.

I would not invalidate the Philadelphia municipal ordinance because the ordinance reinforces the objective of the pension forfeiture statute. The pension forfeiture statute was not

intended to foreclose a municipality from denying retirement benefits for public officials and employees who have committed criminal conduct simply because the evidence falls short of the legal standard necessary for a criminal conviction. The pension forfeiture statute was intended to impose an additional civil penalty for criminal conduct involving a public office or public employment. In instances in which a criminal conviction has been secured, the civil penalty is mandatory. In instances in which there has not been a criminal prosecution or conviction, a municipality should not be foreclosed from producing evidence of criminal conduct in a collateral civil proceeding that will affect the public officer's or public employee's right to receive retirement benefits. Yet, that is the result of the majority's holding. Accordingly, I dissent.